Willie TILLMAN, Jr. *v.* STATE of Arkansas

CR 04-1375 217 S.W.3d 773

Supreme Court of Arkansas
Opinion delivered November 17, 2005

*Brad J. Williams*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

J IM HANNAH, Chief Justice. Appellant, Willie Tillman, Jr., appeals the judgment of the Lonoke County Circuit Court convicting him of first-degree murder and sentencing him to a term of life imprisonment. His sole point on appeal is that the circuit court erred in denying his motion for directed verdict because the State's evidence is not sufficient to sustain his conviction. We disagree and affirm. Our jurisdiction of this case is pursuant to Ark. Sup. Ct. R. 1-2(a)(2), as this is a criminal appeal in which life imprisonment has been imposed.

The victim in this case, Deon Youngblood, was shot and killed on August 29, 2002, while riding in a vehicle with Tillman and Shamane Hendricks.[1] According to Hendricks, he and Tillman believed that Youngblood had been involved in a robbery of cocaine from them in August 2002. Subsequently, Tillman responded to a classified advertisement and purchased a gun. Hendricks testified that Tillman purchased the gun for protection because he did not feel safe after the two were robbed of their cocaine. Hendricks said that about two weeks after the robbery, Tillman said that he was going to kill Youngblood the next time he saw him.

Soon thereafter, Youngblood went for a ride in Tillman's car with Tillman and Hendricks. At some point during the ride, Youngblood was fatally wounded. Both Tillman and Hendricks

---

[1] Prior to Tillman's trial, Hendricks pleaded guilty to the first-degree murder of Youngblood and received a term of thirty-five years' imprisonment in exchange for his testimony at Tillman's trial.

testified at trial, and both admitted to firing shots at Youngblood. However, Tillman moved for directed verdict, arguing that the State failed to present substantial evidence that any of the bullets he fired caused the victim's death. The circuit court denied the motion and, from that ruling, Tillman brings this appeal.

### Standard of Review

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). Whether the evidence excludes every other hypothesis is left to the jury to decide. *Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225 (2000). The credibility of witnesses is an issue for the jury and not the court. *Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

### Sufficiency of the Evidence

Tillman challenges the sufficiency of the evidence on the basis that there was insufficient corroboration of accomplice testimony to support his conviction. However, the record reveals that Tillman did not raise this issue in his directed-verdict motion. At the close of the State's case-in-chief, Tillman made the following motion:

> At this time, the defendant would move for a directed verdict, in that, the State has failed to prove each and every element of the

charged offense, that Mr. Willie Tillman, Jr., knowingly caused the death of . . . Deon Youngblood. The evidence presented by the state crime lab, the — Dr. Sturner, he could not testify as to the order of the bullets fired, and thereby, not indicating which bullet caused the death of Deon Youngblood. There is testimony that . . . Shamane Hendricks did fire into the body of Deon Youngblood. He could not say — he said it appeared that he shot in the side. There was evidence that one of the bullets through the side penetrated vital organs, and that bullet could have caused the death of Deon Youngblood. Therefore, the State cannot prove beyond a reasonable doubt that Willie Tillman caused the death of Deon Youngblood.

 Tillman renewed the motion at the conclusion of his case-in-chief and, again, at the conclusion of the State's rebuttal. The circuit court denied the motion in all three instances. Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that "[a] motion for directed verdict shall state the specific grounds therefor." The requirement that a defendant make a specific directed-verdict motion extends to any challenge to the sufficiency of the evidence corroborating an accomplice's testimony, and the failure to challenge the sufficiency of accomplice-corroboration evidence in a directed-verdict motion at trial precludes appellate review on that ground. *Hutts v. State*, 342 Ark. 278, 28 S.W.3d 265 (2000). Parties are bound by the scope and nature of the objections and arguments made at trial. *Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000). Where an appellant argues on appeal grounds for a directed verdict in addition to the grounds he raised below, the appellate court limits its review to those grounds that were presented to the trial court. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998). This is true even in cases where a sentence of life imprisonment is imposed, as it is this court's duty, pursuant to Ark. Sup. Ct. R. 4-3(h), to examine the record for error on objections decided adversely to the appellant, not to address arguments that might have been made. *Tester, supra* (citing *Childress v. State*, 322 Ark. 127, 907 S.W.2d 718 (1995)). In the instant case, because counsel for Tillman did not specifically challenge the State's evidence corroborating Hendricks's testimony in his directed-verdict motion, his argument is barred. *See id.*

Tillman further asserts that the circumstantial, forensic evidence relating to the gunshot wounds and bullet holes in his car does not amount to substantial evidence that would allow a jury to

conclude that he could have caused the death of Youngblood. Arkansas Code Annotated § 5-10-102 (Repl. 1997) provides, in relevant part, that a person commits murder in the first degree if:

(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or

(2) With a purpose of causing the death of another person, he causes the death of another person; or

(3) He knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed.

The state medical examiner, Dr. William Sturner, testified that Youngblood sustained thirteen gunshot wounds. Two wounds were to the top back of the neck, and the bullets from these wounds were found in the skull and in the brain. Other wounds were to Youngblood's right jaw, forearm, lower right thorax, lower neck, left back, shoulder, hip, lower back, left upper buttock, and right abdomen. Dr. Sturner testified that the two wounds to the neck, from which the bullets were found in Youngblood's head, and the wound to the lower right thorax were each fatal in and of themselves. On cross-examination, Dr. Sturner stated that he could not determine the order in which each of the shots was fired. He further testified that he could not determine which shooter fired each of the shots.

Tillman testified that Hendricks fired the initial shots at Youngblood when the three were riding in Tillman's car. He said that "all of a sudden," he just "heard gunshots" and "slammed on the brakes." Tillman said that he then looked in the backseat and saw that Youngblood was not breathing. He stated that he said to Hendricks, "What the fuck are you doing, man?" Then, Tillman said, he stopped the car, put it in park, and got out, and Hendricks got out of the car and told him to get out of the way. He said that Hendricks pulled the seat back and started shooting at Youngblood again. According to Tillman, Hendricks then tapped him on the shoulder with a pistol and said, "We're in this together. . . It's over with now. You can't tell on me because you're with me." Tillman said that Hendricks then ordered him to shoot Youngblood. He testified that he was so shocked and so scared, he grabbed the gun, closed his eyes, and shot twice in the backseat.

In contrast, Hendricks testified that while the three were riding in Tillman's car, Tillman pulled over to use the restroom, got out of the car, retrieved a gun from underneath the driver's seat, and fired at Youngblood in the backseat. Hendricks related that he saw Youngblood fall out of the car on the driver's side. Then, according to Hendricks, Tillman said, "You really didn't believe I was going to do it, did you?" After Tillman pulled Youngblood completely out of the car, he asked Hendricks to take the clip out of the gun because he could not get it out. Hendricks said that he took the clip out and reloaded the gun for Tillman. Hendricks testified that Tillman then looked at him and said, "Are you going to tell on me?" Hendricks agreed not to tell and then told Tillman to give him the gun. Tillman did so and, upon receiving the gun from Tillman, Hendricks shot Youngblood twice in his "lower stomach" and gave the gun back to Tillman, whereupon, Tillman fired two more shots.

Tillman contends that because Dr. Sturner could not testify as to the order in which each shot was fired or who fired each shot, the evidence is insufficient to prove that he fired any of the fatal shots. Further, Tillman contends that the State produced no evidence showing that the two shots he fired actually hit the victim. Tillman states that even when viewed in a light most favorable to the State, the facts of this case tend to prove little more than the fact that it is possible that his actions caused the death of the victim. Tillman argues that his testimony and the testimony of Hendricks present two equally reasonable conclusions as to which party caused the death of the victim. In short, Tillman contends that the jury was faced with alternative versions as to what caused the death of the victim, and that this merely creates a "suspicion of guilt," which is insufficient to support a conviction of murder in the first degree.

The State asserts that the jury heard both Tillman and Hendricks give their respective, and significantly different, accounts of what occurred at the time of the shooting, but even Tillman testified that both he and Hendricks fired shots at Youngblood. The State correctly notes that in denying Tillman's directed-verdict motion, the circuit court ruled that the question of who fired the shots was one of fact for the jury to decide. Further, the State points out that the circuit court instructed the jury, without objection, that Tillman and Hendricks were accomplices as a matter of law.

■■ Here, the jury was presented with testimony from both Tillman and Hendricks concerning what happened at the time of the shooting and, clearly, the two provided conflicting testimony. Still, the State contends that it makes no difference whether Tillman or Hendricks fired the shot that actually caused Youngblood's death — even assuming that only one of the thirteen shots caused it — because they are each criminally responsible for his death. We agree. There is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). We hold that the circuit court did not err in denying Tillman's motion for directed verdict.

### *Rule 4-3(h)*

In compliance with Ark. Sup. Ct. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.