Robert ELKINS *v.* STATE of Arkansas

CR 08-375                                           288 S.W.3d 570

Supreme Court of Arkansas
Opinion delivered October 9, 2008

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Robert Elkins appeals from his judgment and conviction order for aggravated robbery and rape for which he was sentenced to life imprisonment without parole. His sole point on appeal is that there was insufficient evidence to establish that he was the perpetrator of the alleged crimes. We affirm the judgment.

The record reflects that on the morning of June 15, 2005, at the E-Z Mart Store at 1205 East Street in Texarkana, L.H., the store's clerk, was taking boxes to the store's dumpster when a black male, wearing a ski mask and armed with a silver pistol, accosted her. He followed L.H. into the store and, while crouching behind the counter, ordered her to fill a black duffel bag with money from the cash register. After taking the money, he ordered L.H. to fill the bag with cartons of cigarettes. L.H. did so and then placed additional cigarette cartons into a white E-Z Mart bag. These events were all captured on the store's video surveillance camera.

At the conclusion of the robbery, the man ordered L.H. to go outside to the back of the store, where he made her kneel and perform oral sex on him. After a short time, he ordered L.H. to stand, take her pants down, and turn around and touch her toes. He then penetrated L.H. vaginally with his penis and asked her "if it felt good." After a few minutes, he withdrew before ejaculating and told L.H. to stay on the ground and not get up. Following this, he ran north through some bushes at the rear of the building.

During the course of the robbery, the store's alarm company had alerted the Texarkana Police Department. Upon arriving at the store, police officers observed a man fleeing from the scene. Although unable to apprehend the man, the police officers found a white E-Z Mart bag containing cigarettes, a black duffel bag containing money and cigarettes, a glove, and a mask near a house within a close distance to the store. The police officers sent the mask, the glove, and the duffel bag to the Arkansas State Crime Lab for analysis.

In the course of the investigation, Elkins was developed as a suspect. On June 21, 2004, Elkins's nephew, Frank Davis, met with the lead police investigator, Ed Chattaway. Davis told the investigator that Elkins had told him that he had robbed the E-Z Mart of cash and cigarettes and that he had forced the clerk to perform sexual acts at gunpoint, after which he had ejaculated into a glove. Davis also mentioned that Elkins had told him that he had dropped the stolen items while escaping from the police officers, and, as a result, he needed to commit another robbery because his rent was due. Investigator Chattaway testified at Elkins's trial that Davis had related to him specific details of the crime that had not been released to the public.

Melissa Myhand, a Forensic DNA Analyst for the Crime Lab, testified at Elkins's trial that she had tested a sample cut from the glove the police found at the scene of the crime. Myhand stated

that Alendra Carol, an evidence analyst at the Crime Lab, had conducted a preliminary analysis on the glove sample and discovered that it contained semen. Myhand further testified that she had tested the glove sample and discovered it contained a mixture of the DNA from two individuals. Myhand stated that she had then requested samples to be taken from L.H. and Elkins. Subsequently, Detective Shawana Yonts obtained and submitted to the Crime Lab oral swab samples from both L.H. and Elkins. Myhand testified that her analysis revealed that the mixture of DNA on the glove sample came from Elkins and L.H.

At the close of the State's case, Elkins moved for a directed verdict and argued that there was insufficient evidence to convict him of the crimes. The motion was denied, and Elkins rested without presenting any evidence. Elkins renewed his motion for a directed verdict, which the trial judge denied, and the case was submitted to the jury. Elkins was convicted of aggravated robbery and rape, as already referenced, and sentenced.

■ As a threshold matter, this court must address the State's argument that Elkins's directed-verdict motion was not preserved for review. To preserve a sufficiency-of-the-evidence challenge on appeal, a clear and specific motion for a directed verdict must be made to the trial court. *Pinell v. State*, 364 Ark. 353, 219 S.W.3d 168 (2005). Arkansas Rule of Criminal Procedure 33.1 establishes the procedure for making the motion and reads in pertinent part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.

> . . . .

> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal

> at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

We have said that the reasoning behind this rule is "that when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof." *Pinell*, 364 Ark. at 357, 219 S.W.3d at 171. An additional reason for the requirements under Rule 33.1 is that this court may not decide an issue raised for the first time on appeal. *Id.*

In the case before us, Elkins's counsel moved for a directed verdict at the close of the State's case, saying:

> Your Honor, we'd move for a directed verdict at this point in time based upon the State's lack of any credible evidence to sustain their burden of proof. Namely, we would note the inconsistencies or the flaws in the investigation and the lack of credibility of any fact witnesses in this matter, and we would ask that the court direct a verdict in favor of Mr. Elkins.

It is clear to this court that Elkins's directed-verdict motion failed to state with specificity what the flaws were or why certain witnesses lacked credibility. Now, on appeal, Elkins attempts to argue these specifics. This court, however, has held that Rule 33.1 must be strictly construed. *Pinell*, 364 Ark. at 358, 219 S.W.3d at 172. Because Elkins's directed-verdict motion was nonspecific, it is not preserved for this court's review.

The fact that this case involves a sentence of life imprisonment without parole and is subject to review under Arkansas Supreme Court Rule 4-3(h) does not change our conclusion that this court is precluded from considering Elkins's sufficiency-of-the-evidence challenge. *See Bienemy v. State*, 374 Ark. 232, 287 S.W.3d 551 (2008); *Maxwell v. State*, 373 Ark. 553, 285 S.W.3d 195 (2008). We said in *Maxwell*:

> [T]his court has held in the past that failure to make the motions for directed verdict with specificity regarding the sufficiency issue on

appeal equates to the motion never having been made. *See Tillman v. State*, 364 Ark. 143, 147, 217 S.W.3d 773, 775 (2005); *Webb v. State*, 327 Ark. 51, 60, 938 S.W.2d 806, 811-12 (1997). We hold that this is so even in situations where the motion is specific at the close of all the evidence but not at the close of the State's case. The motion for directed verdict on the issue at hand is simply not preserved. Rule 4-3(h), as a result, does not mandate review . . . when the directed-verdict motion has not been properly made. *See Tillman*, 364 Ark. at 147, 217 S.W.3d at 775.

373 Ark. at 559, 285 S.W.3d at 200.

We now reiterate that Rule 4-3(h) does not require this court to review Elkins's claim that the trial judge erred by denying his motion for a directed verdict.

### Rule 4-3(h) Review

The record in this case has been reviewed for reversible error pursuant to Supreme Court Rule 4-3(h), and none has been found.

Affirmed.