Cite as 2022 Ark. App. 426

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-22-90

| | |
|---|---|
| TYLER MCKISICK | **Opinion Delivered** October 26, 2022 |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | [NO. 26CR-17-713] |
| | HONORABLE MARCIA HEARNSBERGER, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**LARRY D. VAUGHT, Judge**

Tyler McKisick appeals the sentencing order entered by the Garland County Circuit Court following his conviction by a jury of one count of fleeing in a vehicle in violation of Arkansas Code Annotated section 5-54-125(d)(2) (Supp. 2021), one count of possession of fewer than four ounces of a Schedule VI controlled substance in violation of Arkansas Code Annotated section 5-64-419(b)(5)(A) (Supp. 2021), three counts of carrying a handgun for the purpose of attempting to unlawfully deploy it in violation of Arkansas Code Annotated section 5-73-120(a) (Supp. 2021), and one count of fleeing on foot in violation of Arkansas Code Annotated section 5-54-125(c). On appeal, McKisick challenges the sufficiency of the evidence presented against him. We affirm.

On October 3, 2017, at approximately 3:00 p.m., Officer Matthew Ellis of the Garland County Sheriff's Office observed a vehicle briefly stop at a house on Edwards Place in Hot Springs. McKisick was a passenger in that vehicle. The driver and owner of the vehicle,

Demetrius Holmes, and McKisick got out of the vehicle and went into the house. Holmes and McKisick quickly returned to the vehicle and drove away. Holmes was driving, and McKisick rode in the passenger seat. Officer Ellis testified that he followed Holmes's vehicle because there was an outstanding felony warrant for McKisick.

It was raining heavily, and Holmes did not have his headlights on, so Officer Ellis activated the lights on his police vehicle in order to initiate a traffic stop. Instead of pulling over, however, Holmes led Officer Ellis on a high-speed chase, reaching speeds between seventy and eighty miles an hour. Officer Ellis pursued Holmes for almost five miles before Holmes stopped his vehicle and got out. McKisick also exited the vehicle, but instead of obeying Officer Ellis's commands, McKisick ran into a nearby wooded area. After securing Holmes, Officer Ellis pursued McKisick on foot. Officer Ellis testified that he did not maintain visual contact with McKisick during the chase nor did he see McKisick toss any items or have anything in his hands other than a jacket.

After chasing McKisick for approximately four minutes, Officer Ellis cornered him in a dead-end alley near the back of a gas station. Officer Ellis ordered McKisick to come out and show his hands, and McKisick complied. Following McKisick's arrest, law enforcement officers searched the alley and found three handguns that belonged to Holmes. They also found a small pill bottle containing marijuana. The next day, law enforcement officers searched the wooded area where McKisick fled, and they found another pill bottle containing marijuana.

McKisick's case went to trial before a jury in July 2021. At trial, the State introduced a portion of a tape-recorded conversation of McKisick describing to a third person the events that took place the night of October 3, 2017, when Officer Ellis attempted to stop McKisick

and Holmes. McKisick described how Holmes was driving the car, and when they became aware a police officer was attempting to initiate a stop, Holmes "hit the gas," and McKisick told Holmes to "go faster."

Holmes, who was declared by the circuit court to be a hostile witness after he admitted at the trial that he did not want to testify against McKisick because "snitches get stitches," testified that McKisick simply told him to "go." Holmes also testified that McKisick's directive to "go" had no effect on his actions and that he took it upon himself to elude the police. Holmes also testified that, when the men fled from police, it was because they knew the consequences for having guns and drugs in the car. Holmes testified that there was marijuana in the armrest of the vehicle and guns under a seat, that both were accessible to McKisick, and that McKisick was aware that both were there. Holmes also testified that, when Officer Ellis initiated the stop, Holmes and McKisick were smoking marijuana. Holmes testified that, when McKisick exited the vehicle and fled on foot, he took the guns with him. Holmes said he "guessed" that McKisick also took the marijuana. Holmes identified the marijuana found at the scene as his.

The jury found McKisick guilty of one count of fleeing in a vehicle, one count of possession of less than four ounces of a Schedule VI controlled substance, three counts of carrying a handgun for the purpose of attempting to unlawfully deploy it, and one count of fleeing on foot. The circuit court accepted the jury's sentencing recommendations and sentenced McKisick to a total of six years' imprisonment and a fine of $3,000. This timely appeal followed.

When reviewing a challenge to the sufficiency of the evidence, we must assess the evidence in the light most favorable to the State and only consider the evidence that supports the verdict. *Gillard v. State*, 366 Ark. 217, 221, 234 S.W.3d 310, 313 (2006) (citing *Tillman v. State*, 364 Ark. 143, 146, 217 S.W.3d 772, 774–75 (2005)). A conviction will be affirmed if substantial evidence exists in the record to support it, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Tillman*, 364 Ark. at 146, 217 S.W.3d at 775 (citing *Stone v. State*, 348 Ark. 661, 666–67, 74 S.W.3d 591, 594 (2002)). Circumstantial evidence may provide a basis to support a conviction if it is consistent with the defendant's guilt and is inconsistent with any other reasonable conclusion. *Id.* (citing *Edmond v. State*, 351 Ark. 495, 502, 95 S.W.3d 789, 793 (2003)). Whether the evidence excludes every other reasonable conclusion is a matter for the fact-finder to decide. *Id.* (citing *Carmichael v. State*, 340 Ark. 598, 602, 12 S.W.3d 225, 227 (2000)). Witness credibility is also an issue for the fact-finder, which can believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* at 146, 217 S.W.3d at 775 (citing *Burley v. State*, 348 Ark. 422, 429, 73 S.W.3d 600, 605 (2002)).

McKisick challenges the circuit court's denial of his motion for directed verdict regarding his conviction for fleeing in a vehicle. Arkansas Code Annotated section 5-54-125(a) provides that "[i]f a person knows that his or her immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot or by means of any vehicle or conveyance." Fleeing by means of any vehicle or conveyance is considered a Class D felony if, under circumstances

4

manifesting extreme indifference to the value of human life, a person purposely operates the vehicle or conveyance in such a manner that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-54-125(d)(2). A person can be criminally liable for the conduct of another person if he is an accomplice of the other person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2013). A person is an accomplice of another person in the commission of an offense if he has the purpose of promoting or facilitating the commission of an offense and he solicits, advises, encourages, or coerces the other person to commit the offense, or he aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2- 403(a)(1), (2) (Repl. 2013).

McKisick argues that the State failed to present evidence that he took any actions that encouraged Holmes's flight or otherwise promoted or facilitated the flight. This argument is unpersuasive. McKisick was recorded describing the events that took place when Officer Ellis attempted to stop the vehicle, and in his own words, he stated that he told Holmes to "go faster." Holmes testified that McKisick told him to "go." Holmes also acknowledged that he and McKisick were fleeing because they knew the consequences of being pulled over with drugs and guns in the car. McKisick's intention to promote or encourage Holmes's flight is further evidenced by his subsequent decision to flee on foot after the vehicle was stopped.

McKisick also argues that accomplice liability requires proof of "dual intents," meaning that the State must prove both that the defendant intended to promote or facilitate the commission of an offense and that the defendant intentionally undertook the act that provided the primary party aid or assistance in committing the offense. The only case that McKisick

5

cites for this assertion is *Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa. Super. Ct. 2012). The State contends that McKisick failed to preserve this argument by not raising it in his motion for directed verdict. McKisick's motion stated,

> I would like to make a motion for a directed verdict as to the felony fleeing, Your Honor. I don't think the State proved their case. What I mean, they didn't meet all of the elements that's required of felony fleeing. Namely, Your Honor, is that they are not alleging that Mr. McKisick was actually the driver of the car – which he wasn't. They brought in a witness who is their witness who actually verified that Mr. McKisick was not the driver of the car and that namely, he wasn't any way – his decision making as far as the driver of the car had nothing to do with Mr. McKisick prompting or doing anything to encourage actually. So he wouldn't be – I guess what I am saying is that he's not – I wanna say accessory – but what I'm getting at is the actual name which is – to-wit: Acting alone or with another person, knowing his arrest is immediate, did flee, and this would have to be by a conveyance or a car.

"In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor." Ark. R. Crim. P. 33.1(a) (2021). Arkansas courts construe Rule 33.1 strictly. *Blanton v. State*, 2022 Ark. App. 44, at 2. Likewise, an appellant is bound by the scope and nature of his directed-verdict motion and cannot change his argument on appeal. *Scott v. State*, 2015 Ark. App. 504, at 4, 471 S.W.3d 236, 239. Here, McKisick's motion failed to mention intent and failed to give the circuit court an opportunity to rule on the "dual intents" argument that he now makes on appeal. We therefore affirm because McKisick failed to preserve this argument for our review.

We note that, even if McKisick had adequately preserved his "dual intents" argument, he has failed to fully develop this argument on appeal. In *Progressive Eldercare Services-Chicot, Inc. v. Long*, 2014 Ark. App. 661, at 5, 449 S.W.3d 324, 327, we held that "with respect to the cases decided in other jurisdictions . . . it is axiomatic that [Arkansas courts] are not compelled to

6

follow their holdings." Here, McKisick has not adequately explained how or why a legal theory from Pennsylvania would apply to his conviction under an Arkansas statute. Instead, McKisick's "dual intents" argument focuses entirely on his claim that the State did not present sufficient evidence that McKisick encouraged Holmes to flee, a contention that we have considered and rejected above.

McKisick's second point on appeal challenges the sufficiency of the State's evidence regarding his convictions for possessing handguns with the purpose of employing them illegally against a person in violation of Arkansas Code Annotated section 5-73-120(a). McKisick argues that the statute does not criminalize mere possession of a handgun absent evidence of intent to use it illegally, and he argues that, if it did, such a law would violate the Second Amendment. McKisick contends that the State presented no evidence that he acted with the intent to use the firearms illegally against a person.

Again, McKisick failed to preserve his argument for our review. His directed-verdict motion stated:

> Your Honor, and the other counts such as carrying of a weapon and possession of a controlled substance, namely, Your Honor, that they didn't meet all the elements of those two either, Your Honor. And to be more specific is that one item that was found was found a day later. I mean you've got twenty-four hours of people walking around, so that would be, at best, that it would be constructive evidence at the most. It's not real evidence. Any real evidence.

This motion fails to mention intent and was insufficient to preserve his appellate challenge to the sufficiency of the State's proof of that element.

Third, McKisick argues that the State failed to present sufficient evidence to support his conviction for possession of marijuana. On appeal, he claims that the State failed to prove

7

constructive possession of the drugs that were found at the scene the day after his arrest. At trial, his motion for directed verdict stated:

> And to be more specific is that one item that was found was found a day later. I mean you've got twenty-four hours of people walking around, so that would be, at best, that it would be constructive evidence at the most. It's not real evidence. Any real evidence.

The State argues that McKisick conceded this issue because, in the motion, his attorney described the State's case against him as "constructive evidence at most." While the phrasing used in McKisick's motion is confusing and inarticulate, his attorney was clearly arguing that the drug-possession charge should be dismissed because there was not a clear enough connection between McKisick and the drugs, not conceding that McKisick was in constructive possession of the drugs. We therefore reject the State's argument that McKisick conceded this point in his motion for directed verdict.

McKisick's motion for directed verdict fell short in another way, however, because it challenged constructive possession of only the marijuana found at the scene a day after McKisick was arrested. This argument ignores the fact that the State also presented evidence that on the night that McKisick was arrested, officers discovered a pill bottle containing marijuana near where McKisick emerged from the wooded area during the chase shortly before his arrest. Notably, Holmes identified the pill bottle containing marijuana as his and noted that it had been in the car on the night in question, that McKisick knew it was there, that McKisick had access to it, that the two men had been smoking marijuana when Officer Ellis initiated the stop, and that Holmes "guessed" that McKisick took the drugs with him when he fled on foot. McKisick's motion for directed verdict and his arguments on appeal fail to address the marijuana found on the night he was arrested and only challenge the State's

8

proof of constructive possession as to a second bottle of marijuana found the following day. McKisick was convicted of only one count of possession of fewer than four ounces of a Schedule VI controlled substance in violation of Arkansas Code Annotated section 5-64-419(b)(5)(A), and the evidence presented at trial regarding the marijuana found near him on the night of his arrest was sufficient to support that conviction.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

*Terrence Cain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.